2014R00504/JF & BT

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon.   CLAIRE C. CECCHI |
| | : | |
| | : | Criminal Number:  20-628 (CCC) |
| v. | : | |
| | : | |
| GEORG INGENBLEEK | : | 18 U.S.C. § 1341 |
| | : | 18 U.S.C. § 1956(a)(2)(B) |
| | : | 18 U.S.C. § 1512(c)(1) |
| | : | 18 U.S.C. § 2 |

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNTS ONE AND TWO**
(Mail Fraud)

**Individuals and Entities**

1.     At all times relevant to this Indictment:

a.     Defendant Georg Ingenbleek ("INGENBLEEK") was a German citizen engaged in mass mailing solicitations to individuals across the United States for psychic services.

b.     Regency Direct Marketing AG ("Regency") was a company located in Switzerland that INGENBLEEK was associated with and used to orchestrate mass mailings for psychic services.

c.     Company-1 was a company located in Piscataway, New Jersey, that provided direct mail marketing services for marketing campaigns,

which included printing, producing, and mailing letters to a high volume of recipients. INGENBLEEK engaged Company-1 to assemble and mail solicitations for psychic services to hundreds of thousands of individuals across the United States.

d.    Company-2 was a company located in Clifton and Carlstadt, New Jersey. INGENBLEEK hired Company-2 to provide services for mass mailing solicitations for psychic services, which included opening mail sent in response to INGENBLEEK's psychic solicitations, tracking responses to the psychic solicitations, mailing psychic materials and purported billing notices, collecting funds from mail sent by recipients, and transmitting the funds collected from recipients to accounts selected by INGENBLEEK.

e.    Timothy Clements ("Clements") resided in New Jersey and was President of Company-2.

f.    PacNet Services, Ltd. ("PacNet") was incorporated in British Columbia, Canada, and had offices in Vancouver, British Columbia, Canada, and Shannon, Ireland. INGENBLEEK hired PacNet to process checks collected by Company-2 from INGENBLEEK's psychic promotions.

g.    Victim-A was approximately 67 years-old and maintained a Post Office Box in Los Lunas, New Mexico.

h.    Victim-B was approximately 87 years-old and maintained an address in Warren, Michigan.

2

i.      Bank-A was an American multinational investment bank and financial services company headquartered in Charlotte, North Carolina. Clements opened and maintained a personal account at Bank-A.

j.      Bank-B was a Swiss multinational investment bank and financial services company based in Switzerland.  Regency held an account at Bank-B that was controlled by INGENBLEEK.

## The Scheme to Defraud

2.     Beginning at least as early as in or around 2011 through in or around 2016, in the District of New Jersey and elsewhere, defendant

GEORG INGENBLEEK

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud Victim-A, Victim-B, and others (the "Victims"), and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

## Goal of the Scheme to Defraud

3.     The goal of the scheme was for INGENBLEEK to enrich himself by causing the Victims to send payments in response to materially misleading psychic solicitations and billing notices, and causing the fraudulently obtained payments to be deposited into bank accounts selected and controlled by INGENBLEEK.

3

## Manner and Means of the Scheme to Defraud

4.     It was part of the scheme to defraud that:

**Fraudulent Psychic Solicitations**

a.     INGENBLEEK created numerous direct mail solicitations supposedly from world-renowned psychics, falsely and fraudulently claiming that the Victims were being contacted because they had been the subject of specific visions by the psychics, including visions that the Victims were going to receive large sums of money and good fortune.

b.     INGENBLEEK hired Company-1 to print and mail fraudulent psychic solicitations.   Using software, files, and templates provided by INGENBLEEK, Company-1 printed thousands of identical solicitations for each promotion that were addressed to each Victim individually to give the false impression that they were unique to each Victim.   The solicitation letters appeared personalized, repeatedly referring to the Victims by their first names and often containing portions that appeared to be hand-written by the psychic personas INGENBLEEK created.   In fact, the letters were mass-produced by Company-1 using software and information provided by INGENBLEEK.

c.     INGENBLEEK was responsible for the content, design, and list of Victims for each mailing sent by Company-1.   INGENBLEEK targeted Victims who were elderly or otherwise vulnerable.

d.     INGENBLEEK's fraudulent psychic solicitations misrepresented that the Victims would receive individual psychic services and

4

psychic objects that would result in great fortune.

e.      For example, one of the fraudulent psychic solicitation mailings contained a letter falsely promising to provide special numbers that would "achieve with 100 percent certainty this one maximum win in the lottery," which the letter represented would be "over a million dollars!!!!!!". Another promised the Victims six "lucky numbers" that would bring the recipient "happiness and wealth" and enable the recipient to "move into a fantastic home," "travel abroad," and to pay off debts.

f.      Many of the fraudulent solicitations falsely promised the Victims that the psychic services and psychic objects were free of charge.

g.      The fraudulent solicitations directed Victims who were interested in the psychic services and psychic objects to mail a response card in a pre-addressed envelope to a mailbox controlled by Company-2.

h.      Victims who responded to the solicitations did not receive the personalized psychic services they thought they would receive, nor the other items promised by the supposed psychics.   In the instances when a Victim received a response, it was a mass-produced pamphlet or trinket of nominal value.

**Fraudulent Billing Notices**

i.      INGENBLEEK directed Clements and Company-2 to send fraudulent billing notices that were intended to deceive the Victims into believing that they owed money for psychic services, which in many cases had

5

been offered free of charge.   The fraudulent billing notices were labeled "collection notices" and "invoices," falsely representing that the Victims owed late payment fees, and falsely stating that a psychic or astrology organization would refer the Victim to a "collection agency" and take legal action if the recipient did not send a check, usually in an amount of between $20 to $50.

j.    For example, INGENBLEEK caused Company-2 to mail a fraudulent billing notice to Victim-A on or about March 3, 2016, falsely labelled as a "Collection Notice" and "Final Notice."   This notice contained numerous false and fraudulent statements, representations, and promises, including a representation that Victim A's "failure to settle [her] account . . . resulted in [her] account being passed to a collection agency."   The notice also falsely threatened to take "legal action" and to "prosecute" Victim A "to the full extent of the law" if she did not immediately pay $46 and an $8.30 late fee.

k.    Similarly, on or about July 5, 2016, INGENBLEEK caused Company-2 to mail a fraudulent billing notice to Victim-B falsely stating that Victim-B's account had been "passed to a collection agency" and threatened that non-payment would "definitely affect [her] credit history and further fees of at least $25.00 [would] be assessed."

l.    Using software, files, and templates provided by INGENBLEEK, Clements and TCA printed and mailed thousands of fraudulent billing notices, which were again targeted at elderly and vulnerable Victims. The fraudulent billing notices included pre-addressed return envelopes and

6

instructed the Victims to return payments to mailboxes controlled by Company-2.

m.    INGENBLEEK often caused Company-2 to send multiple billing notices to the same Victims.

n.    INGENBLEEK's conduct resulted in more than ten million dollars in losses to the Victims of the psychic solicitations.

5.    On or about the dates set forth below, for the purpose of executing and attempting to execute the scheme and artifice to defraud, in the District of New Jersey and elsewhere, defendant

GEORG INGENBLEEK

knowingly caused to be delivered by United States mail and by private and commercial interstate carrier according to the direction thereon at the place at which it was directed to be delivered the following matters, each constituting a separate count of this Indictment:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| One | March 3, 2016 | Fraudulent collection notice sent from Company-2 in New Jersey to Victim A in Los Lunas, New Mexico |
| Two | July 5, 2016 | Fraudulent collection notice sent from Company-2 in New Jersey to Victim B in Warren, Michigan |

In violation of Title 18, United States Code, Sections 1341 and 2.

7

## COUNTS THREE THROUGH SIX
(Money Laundering)

1.    The allegations contained in paragraphs 1 through 4 of Counts One and Two of this Indictment are incorporated and realleged as if fully set forth herein.

2.    On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

### GEORG INGENBLEEK

transported, transmitted, transferred, and attempted to transport, transmit, transfer monetary instruments and funds from a place in the United States, that is New Jersey, to and through places outside the United States, that is Canada and Switzerland, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is mail fraud, in violation of Title 18, United States Code Sections 1341 and 2, as follows:

8

| | | |
|---|---|---|
| Three | February 17, 2016 | Wire in the approximate amount of $10,901 from an account at Bank-A held by Clements in New Jersey to an account at Bank-B held in the name of Regency in Switzerland |
| Four | May 19, 2016 | A package sent from New Jersey to Canada by private carrier consisting of approximately 1,322 Victim checks with a total approximate value of $41,663.14 |
| Five | May 20, 2016 | Wire in the approximate amount of $12,460 from an account at Bank-A held by Clements in New Jersey to an account at Bank-B held in the name of Regency in Switzerland |
| Six | June 20, 2016 | A package sent from New Jersey to Canada consisting of approximately 1,287 Victim checks with a total approximate value of $38,957.08 |

In violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

## COUNT SEVEN
(Obstruction of Justice)

1.     The allegations contained in paragraphs 1 through 4 of Counts One and Two of this Indictment are incorporated and realleged as if fully set forth herein.

2.     In or about 2014, the United States Attorney's Office for the District of New Jersey, the U.S. Postal Inspection Service, the United States Internal Revenue Service, the U.S. Department of Homeland Security, and a federal grand jury sitting in Newark, New Jersey, commenced an investigation relating to fraudulent psychic mailings by INGENBLEEK, Clements, Company-2, and others (the "New Jersey Investigation").

3.     In or around September 2016 and December 2016, the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, the Consumer Protection Branch of the Department of Justice, and the U.S. Postal Inspection Service, announced criminal and civil actions against PacNet, PacNet executives, and other mail fraud services providers (the "PacNet Investigation").

4.     In or around September 2016, INGENBLEEK directed Clements to discard all materials related to the fraudulent psychic mailings in response to the New Jersey Investigation and the announcement of actions being taken by law enforcement authorities in the PacNet Investigation.   For example, in an email, dated on or about September 21, 2016, INGENBLEEK asked Clements

10

about the status of the "New Jersey case" and stated, "If you get a visit from authorities it might be helpful to have as little material on stock as possible." In another email, dated on or about September 23, 2016, INGENBLEEK sent Clements a link and a screenshot of a press release by OFAC announcing actions taken against PacNet, and in a later email, told Clements, "You cannot wait! I advise you urgently to get rid of the material! Use your own car, rent a truck, start today, work all weekend."

5.     In or around November 2016, INGENBLEEK made a request to a representative of Company-1 by email and phone to destroy any records of the fraudulent psychic solicitations INGENBLEEK sent to Company-1, in response to the PacNet Investigation.

6.     From at least in or around September 2016 to at least in or around December 2016, in the District of New Jersey and elsewhere, the defendant,

GEORG INGENBLEEK

corruptly altered, destroyed, mutilated, and concealed a record, document, and other object, and attempted to do so, with the intent to impair the object's integrity and availability for use in an official proceeding, to wit, INGENBLEEK instructed others to destroy materials and records related to fraudulent psychic promotions in order to impair and impede investigations which INGENBLEEK understood were ongoing by federal authorities relating to mass-marketing fraud, including the offenses charged in Counts One through Six.

In violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

11

## FORFEITURE ALLEGATION AS TO COUNTS ONE, TWO, AND SEVEN

1.    As a result of committing the mail fraud offenses charged in Counts One through Two and the obstruction offense charged in Count Seven of this Indictment, defendant GEORG INGENBLEEK shall forfeit to the United States, pursuant to Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the violation of Title 18, United States Code, Section 1341 in Counts One through Two of this Indictment, and to the violation of Title 18, United States Code, Section 1512(c)(1) alleged in Count Seven of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH SIX

2.    As a result of committing the money laundering offense charged in Counts Three through Six of this Indictment, defendant GEORG INGENBLEEK shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such money laundering offense, and all property traceable to such property.

### Substitute Assets Provision
### (Applicable to All Forfeiture Allegations)

3.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

12

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in paragraphs 1 and 2.

A True Bill,

CRAIG CARPENITO
United States Attorney

13

CASE NUMBER: **20** - 628 (CCC)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

### v.

## GEORG INGENBLEEK

## INDICTMENT FOR
18 U.S.C. § 1341
18 U.S.C. § 1956(a)(2)(B)
18 U.S.C. § 1512(c)(1)
18 U.S.C. § 2

### A True Bill,



## CRAIG CARPENITO
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

JONATHAN FAYER
ASSISTANT U.S. ATTORNEY
BENJAMIN TEICH
SPECIAL ASSISTANT UNITED STATES ATTORNEY
NEWARK, NEW JERSEY
(973) 645-2718